### J. J. JOHNSON v. THE STATE.

No. 1533. Decided June 26, 1912.

**1.—Murder—Evidence—Dying Declaration.**

Where, upon trial of murder, a proper predicate had been laid, there was no error in admitting in evidence the dying declaration of the deceased; besides part of it had been elicited by the defendant.

**2.—Same—Evidence—Res Gestae.**

Upon trial of murder there was no error in admitting in evidence the res gestae statement of the deceased, made within a minute or two after the shooting, to the effect that defendant had shot him.

**3.—Same—Evidence—Moral Turpitude—Misdemeanor.**

Proof that a witness is under indictment, to affect his credibility, can only be made where the offense is of the grade of felony, or if a misdemeanor is an offense involving moral turpitude, and there was no error in excluding testimony as to misdemeanors not involving moral turpitude.

**4.—Same—Evidence—Ill-Will—Threats—Details.**

While it was admissible to admit in evidence declarations of the defendant and his companion, made a short time before the homicide, and which tended to show ill-will and a threat against the deceased, details of other matters not brought out by the defendant were inadmissible.

**5.—Same—Evidence—Practice in District Court—Discretion.**

Article 698, Code Criminal Procedure, provides that the court may allow testimony to be introduced at any time before argument is concluded, if he deems it necessary to the due administration of justice; and there was no error in admitting testimony that deceased and defendant had been opposing candidates.

**6.—Same—Remarks by Judge.**

While it may not have been reversible error, yet it was improper for the court to remark that the jury who were empaneled must not separate, for if they did it would force the court to grant a new trial.

**7.—Same—Charge of Court—Murder in First Degree.**

Where the defendant was convicted of murder in the second degree, the court's charge on murder in the first degree need not be considered on appeal.

**8.—Same—Charge of Court—Murder in Second Degree.**

Where the court charged the jury that when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt nor tend to mitigate, excuse or justify the acts, then the law implies malice, the same was not susceptible to the criticism that it instructed the jury that any lawful killing would be murder in the second degree, when read as a whole.

**9.—Same—Charge of Court—Principals.**

Where, upon trial of murder, the evidence showed that defendant and his companion acted together both immediately before and after the homicide, the court was authorized to submit the law of principals, but should have required the presence of both at the time of the commission of the offense, although this omission might not have been reversible error; yet, where the evidence raised the issue as to who fired the fatal shot the court should have submitted the issue that if defendant did not aid or encourage, etc., and did not know the unlawful intent of his companion he would not be guilty.

**10.—Same—Charge of Court—Provoking the Difficulty.**

Where, upon trial of murder, the evidence did not show that defendant began the conversation that led up to the difficulty, or any antecedent act on his part, it was error to submit a charge on provoking the difficulty.

**11.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence showed no act or conduct on the part of the deceased at the time that in law would be adequate cause to reduce the offense to manslaughter, nor any antecedant threats or misconduct on the part of the deceased prior to the fatal encounter, the court should not have charged on manslaughter.

**12.—Same—Rule Stated—Sudden Passion—Adequate Cause.**

Sudden passion, without the accompanying adequate cause to produce the passion as defined in law will not reduce a homicide to the grade of manslaughter.

**13.—Same—Charge of Court—Self-Defense—Burden.**

If the evidence had justified the charge on provoking the difficulty, the same should not have placed the burden on defendant to prove that he had not lost the right of self-defense, as this is on the State.

**14.—Same—Charge of Court—Burden.**

Where the court's charge on self-defense, except as above indicated, did not shift the burden of proof, there was no error on that ground as to the balance of the charge.

**15.—Same—Charge of Court—Deadly Weapon—Presumption—Words and Phrases.**

Where deceased was an officer and had a right to have a pistol, this fact did not raise the presumption of his using it unless that was shown, but the court in his charge presenting the presumption arising under article 676, Penal Code, should have included the words "or it reasonably so appeared to defendant," or words of similar import.

Appeal from the District Court of Jasper.  Tried below before the Hon. W. B. Powell.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Blackshear, Judge Bradley* and *Carter & Walker,* for ap-

pellant.—On question of remarks by judge: Placker v. State, 125 S.
W. Rep., 409; Chapman v. State, 57 S. W. Rep., 965; Murphy v.
State, 57 S. W. Rep., 967; Melcik v. State, 24 S. W. Rep., 417; Bond
v. State, 20 Texas Crim. App., 421; Moncallo v. State, 12 id., 171.

On question of dying declaration: Warren v. State, 9 Texas Crim.
App., 629; Roberts v. State, 5 id., 141; Williams v. State, 40 Texas
Crim. Rep., 570; Bateson v. State, 80 S. W. Rep., 88; Lockhart v.
State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1025; Bradshaw v.
State, 70 S. W. Rep., 215; Winfrey v. State, 56 S. W. Rep., 919.

On question of the court's charge on principals: Leslie v. State,
57 S. W. Rep., 659; Patton v. State, 62 Texas Crim. Rep., 28, 136
S. W. Rep., 459; Rhodes v. State, 39 Texas Crim. Rep., 332; Red v.
State, 47 S. W. Rep., 1003.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted for murder and when
tried was convicted of murder in the second degree, and his punish-
ment assessed at seven years confinement in the penitentiary.

The State's testimony would show that appellant and deceased, Dan
Cooper, were opposing candidates for constable, and deceased defeated
appellant. That on the night of the fatal encounter there was a show
in the town of Kirbyville, and defendant and Walter McMahon were
on the grounds and were heard to state that "Dan Cooper (deceased)
thinks he is damn smart in that office—we will fix him so that he
will not act so damn smart;" another witness testified he saw the two
together, and he heard one of them say "they were going to get Dan
Cooper and Jeff Havens—they would get even with the damn long-
legged son-of-a-bitch." After the show was over appellant and Mc-
Mahon went to the pool hall of J. B. Gibbs, and while they were
there deceased appeared at the front door with a prisoner, and asked
Gibbs if this (the prisoner) was the man, and upon being informed
that he was, said he would have to lock him up; and that if he had
had a key before he would have locked him up at first, when appel-
lant remarked, "You have a key now," when deceased replied he had
one then, but he had been compelled to ask appellant for it three or
four times before getting it, when appellant said, "You didn't," and
deceased replied, "I did," Johnson then saying, "You are a damned
liar, or a "God-damn liar." Deceased turned in the direction of
Johnson and reached out his hand toward Johnson when a pistol or
pistols fired twice. No witness says deceased had a pistol in his
hand when he reached towards Johnson, but the circumstances would
indicate that he might have had, for several say that as deceased
backed off the gallery a pistol was dropped on the gallery, and when
picked up was identified as the pistol carried by deceased. Deceased
retreated toward Robert Cooper's store, and when he got in there
told two witnesses that Johnson had shot him. Later when Dr. Bean

arrived he told him that McMahon had shot him; there were two in it; they had set their plans to take his life and had accomplished it; that he did not want the wrong man hurt.

When appellant was arrested about twenty minutes after the shooting, he surrendered a 45-calibre pistol, and the witnesses say it had not been fired in some time. Upon the statement made by deceased to Dr. Bean that McMahon shot him, and from the fact that the pistol found in his possession had not been fired, and the further fact that the witnesses testify that the wound was made by a ball, not exceeding a 38-calibre, and indicated that it was made by a 32-calibre, and some other circumstances in the case, appellant insists that the testimony more strongly points to McMahon as being the one who fired the shots than it does to him. However, some four or five witnesses testify positively to seeing appellant shoot, while no witness testifies positively to seeing McMahon shoot, and the sheriff testifies that he knew that appellant owned a 32-calibre pistol, as he was at that time a deputy sheriff and he had seen him with it. On cross-examination appellant developed the fact that while the witnesses used "they" as to what was said near the show about deceased, yet in fact it was McMahon who had made the remarks in the presence and hearing of the witnesses about deceased, and had said, "They were going to do those things that night." This is a sufficient statement of the case to make clear the rulings herein.

1. We do not think the court erred in permitting Dr. Bean to state what deceased told him about the difficulty. It was sufficiently shown that he was aware of approaching death. The doctor states when he arrived deceased stated he believed he was going to die, and remarked, "Doctor, you are too late." It is not shown by any witness that he had any hope of recovery at the time, and it is apparent that he was sane and the statements were not made through persuasion, and were not made in answer to interrogatories calculated to lead him to make any particular statement. In addition to this, defendant relied on the statement made to this witness that it was McMahon who shot, and the remark was a part of the same conversation. If one part is elicited by defendant, then all the conversation relating to the same matter would be admissible.

2. Neither was there error in permitting Cate Lee to testify that deceased told him that Johnson (appellant) had shot him. The witness testified that when the shots were fired he was in Robert Cooper's restaurant about forty feet from the place of the shooting. That in about a minute or a minute and a half thereafter deceased came in, and then it was that he told him appellant Johnson had shot him— that blood was flowing freely from him. This was clearly admissible as a res gestae statement. This ruling also applies to the testimony of A. C. Fulletz, who says deceased ran from the place of the shooting to the restaurant of Robert Cooper, about forty feet, and made a statement to him almost immediately after he got in the restaurant.

It is immaterial that the statement was made in answer to a question propounded, witness saying it was only about two minutes after the shots were fired until he saw deceased. The witness asked him who shot him, and he answered "Johnson." Under all the decisions these statements were res gestae of the transaction. Witness says deceased was bloody all over and he helped pull off his coat.

3. There was no error in refusing to permit the defendant to prove that witness Petty was under indictment for violating the local option law, it being a misdemeanor in that county. Nor was there error in refusing to permit it to be shown that the witness Stevens was under indictment for unlawfully riding a horse, that also being a misdemeanor in this State, and no proof being offered that it was a graver grade of offense in Louisiana. In addition to this the copy of indictment offered had no certificate attached thereto, and no proof was offered that it was an examined copy. Proof that a witness was under indictment, to affect his credibility, can only be made where the offense is of the grade of felony, or if a misdemeanor, is an offense involving moral turpitude.

4. There was no error in permitting the witness Petty to testify, "they (referring to defendant and Walter McMahon) said they would get even with the long-legged son-of-a-bitch." It is shown that this remark was made the night of the difficulty, and only a short time prior thereto, and the remark in the connection used tended to show ill will and a threat. However, this witness Petty should not have been permitted to go into details about where he was going, the purpose of his trip, and that he got a .pistol to protect Jeff Havens on account of threats made by appellant and McMahon to do Haven harm. He should be permitted to testify to the threat made about deceased and the remarks made in connection therewith, but not to go into details of other matters unless brought out by appellant on cross-examination.

5. As to the time of introduction of testimony, this is a matter largely within the discretion of the trial court, as article 698 of the Code of Criminal Procedure provides that the court may allow testimony to be introduced any time before argument is concluded, if he deems it necessary to the due administration of justice. There is no such abuse of this discretion in permitting Sheriff Stevenson to testify as would call for a reversal of the case. Nor was there error in permitting a witness to testify that deceased and appellant were opposing candidates for constable in the preceding election. In the light of the record, this may have been the incentive or moving cause of the trouble between them, and was admissible on the question of motive, etc.

6. Appellant shows by a bill that each of the jurors selected had testified that they knew the result of a former trial, and knew the trial court had set aside that judgment, but had answered that such knowledge would not influence their verdict, and had been accepted,

when after they were sworn and empaneled, at adjournment time, the court instructed the jury they must not separate, for if they did so, "it would force him to grant a new trial." This was improper, and the objections of appellant thereto under the circumstances of this case seem to be well founded. As explained by the court, this might not alone present reversible error, yet as the case will be reversed anyway on other grounds, we call attention to it that the court may not again fall into the same error, but may instruct them in the first instance in the way he did after this exception had been reserved.

7. As appellant was acquitted of murder in the first degree, and can not again be tried for that offense, we will not discuss the grounds in the motion complaining of that portion of the charge.

8. The charge on murder in the second degree, when read as a whole, is not susceptible to the criticism that it instructed the jury that any unlawful killing would be murder in the second degree, for it instructed them, "when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice," etc.

9. Neither do we think the court erred in charging on the law of principals. The evidence shows that appellant and McMahon were together all that night until appellant was arrested; that the threats made near the show were that "we" are going to, etc., tonight; the State contending that appellant made a portion of the threats; if not, he engaged in the conversation, and his words, acts and conduct made the threats the acts of both; that they both left the show grounds together and went to the pool hall together; and it is further shown that McMahon had no words with deceased at the time of the shooting, and if in fact he did not fire any shot it was fired because of the altercation between appellant and deceased; that as they left the pool hall appellant said to McMahon, "You started this with me, are you going to finish with me?" and McMahon replied, "Yes, I am with you." These facts fully authorized the court to submit the law of who are principals in the commission of an offense. The criticism of the court's charge on principals, that the court does not require both to be present at the time of the commission of the offense is perhaps well founded, and in framing the charge on another trial this defect should be remedied. However, as the testimony discloses beyond doubt that they were both present, this would not alone present reversible error, as this is an undisputed fact. However, appellant insists that if the court charged the law applicable to who are principals, he should have presented affirmatively his defense, that is, that even though he was present, if McMahon fired the fatal shots, and appellant did not aid or encourage him in so doing by word or act, and did not know the unlawful intent he would not be guilty of any offense. Inasmuch as the deceased told Dr. Bean who killed him, and

the sheriff and Dr. Ogden testify that the pistol taken off appellant after the shooting had not been fired, and also testify this pistol was a 45-calibre pistol, while the testimony shows the wound was inflicted with a 32 or 38-calibre pistol, and no pistol of that calibre being found in his possession at the time, the court should have presented this theory of the case, as it appears this was one of his principal contentions. It may be the court thought that the testimony by a preponderance thereof showed that appellant fired the shot, and we are inclined to think so, too, yet if the evidence raises such an issue as it does in this case, the theory of the State and defendant should both be properly presented in the charge. The court presented the theory from the standpoint of the evidence introduced by the State, but wholly failed to present the converse of that theory in presenting the law as to principals.

10. A number of criticisms are contained in the motion for a new trial as to the charge on provoking the difficulty, but as we do not think a charge on this issue should have been submitted, we will not discuss them. Although it is shown that threats were made at the show tent, yet when appellant and McMahon left the show they did not go to where they knew they would meet deceased, but went to the pool hall. After getting to the pool hall, and appellant had engaged in a game of pool, deceased appeared at the door; it is true, on a lawful mission. Yet if there were strained relations and animosity existing between the men on account of the election contest or other causes as was contended by the State, the appellant made no remark, but the remarks were first made by deceased about not having any keys at a prior hour. Now, if there was feeling about these keys, deceased must have known that the remark was calculated to call forth a remark from appellant, who was standing in a few feet of him. In answer to this remark appellant stated, "Well, you have the keys now." And then the remainder of the conversation occurred, and it is a question in this record who was guilty of the first overt act. Appellant not beginning the conversation that led up to the difficulty, and no antecedent acts being shown, the issue of provoking the difficulty was not in the case, and it was error for the court to submit this issue.

11. And having held that provoking a difficulty, or imperfect self-defense, was not in the case, neither do we think the evidence raises the issue of manslaughter, and, therefore, will not discuss the grounds assailing those paragraphs of the charge. The evidence discloses no act or conduct on the part of deceased at the time that in law would be adequate cause to reduce the offense to manslaughter, and there being no evidence of antecedent threats or misconduct on the part of deceased prior to the fatal encounter, the evidence presents no theory upon which adequate cause could be based. Sudden passion, without the accompanying adequate cause to produce the passion as defined in law, will not reduce an offense to the grade of manslaughter.

If on another trial the evidence is of the same nature as on this trial, the court will not charge on provoking the difficulty nor on manslaughter. The evidence, as presented on this trial from defendant's standpoint, is that when the conversation about the keys took place deceased wheeled and started towards him with his right arm raised, and from the fact his pistol was heard to drop on the gallery immediately after the shooting and found there, it might be contended that he had a pistol in his hand at some time before leaving the scene of the difficulty. This would raise the issue of self-defense, not manslaughter.

12. The criticism of the sentence, "if you find that the defendant did not lose his right of self-defense under the instructions given you, then upon the law of self-defense you are instructed," etc., need not be discussed as it can not occur again under the holding that provoking the difficulty is not in the case. But if additional testimony should be adduced on another trial, and the court should think it proper to again submit that issue, this clause will be so charged as not to place the burden on defendant to prove that he had not lost the right of self-defense, as the burden is on the State to prove that he had lost his right of self-defense, if he had done so.

13. The remainder of the charge on self-defense does not shift the burden of proof as contended, and there is no error in the charge in that respect.

14. The criticism of that part of the charge presenting the presumption arising under article 676 of the Penal Code is in part well founded. Where the court instructs the jury "and if the weapon used by him, and the manner of its use, were such as were reasonably calculated to produce death or serious bodily injury," should have been followed by the words "or it reasonably so appeared to defendant," or words of similar import. Deceased was an officer, and he had a right to have a pistol, and the fact he did have one, unless he in some manner attempts to make use of it, would not raise any presumption.

There are a number of other grounds in the motion for a new trial, but we do not deem it necessary to discuss them as in the foregoing we have sufficiently ruled on all matters.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*