ROSCOE JONES v. THE STATE.

No. 14361.    Delivered May 27, 1931.

The opinion states the case.

*John B. McNamara,* of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty years.

Appellant was employed as an automobile mechanic in a garage operated by his father. He had sold an automobile to Jesse Cline and Clarence Cline on the deferred payment plan. At the request of the Cline boys appellant had gone to the home of Ab. Cline, their uncle, where Jesse Cline and Clarence Cline resided, for the purpose of collecting a deferred payment on the car. Upon his arrival, appellant was invited into the house, where he drank some home brew with the Cline boys. While in the house it was agreed between those present that Jesse Cline and Clarence Cline would deliver the automobile to appellant because they were unable to meet their payments. All of the discussion between the Cline boys and appellant about the car was good-natured and amicable. The parties remained in the house from about 11:30 a. m. until 3 o'clock in the afternoon. It had been raining for several hours. After the rain stopped appellant, Ab. Cline, Jesse Cline and Clarence Cline left the house. Shortly after they had gone into the yard Ab. Cline remonstrated with appellant and one of the Cline boys for urinating near the house. Appellant and the Cline boy immediately desisted and went to a nearby outhouse. The automobile which the Cline boys were delivering to appellant had to be pushed from the yard. Appellant and the Clines undertook to push the automobile into the road in order that appellant might tie it behind his truck. While the parties were engaged in pushing the car from the yard into the road it became stuck in a small ditch. Jesse Cline then went to the home of Lloyd McCollum, deceased, which was about 200 yards away. A few minutes after Jesse

Cline went to McCollum's house Ab. Cline stated that he would go to the home of deceased and get a chain to pull the car out of the ditch. Deceased and a Mr. Chamberlain returned with Ab. Cline and Jesse Cline. The community in which Cline lived was known as Bull Hide. As soon as deceased approached appellant he said to appellant, in substance, that it looked like he had come down there to impose on the Cline boys and run Bull Hide. Appellant replied that he was not trying to run over anybody but trying to push his car out of the ditch, and asked deceased if he would help push the car out. Deceased replied: "No, the law will have to push the car out of the ditch; it is the law's business to take the car." Appellant said: "Well, if you feel that way about it you had better go back to your home." Ab. Cline then asked deceased to assist in trying to get the car out of the ditch and deceased replied: "Well, I will help you (meaning Ab. Cline), but I will not help him (meaning appellant)." After an unsuccessful effort to get the car out of the ditch, deceased walked to the automobile and began to clean his shoes off on the running board. Some of the witnesses said deceased was using a stick, some said he was using his knife and another witness said that he was scraping his foot on the running board of the car. While deceased was thus engaged, according to appelalnt's testimony, Ab. Cline told appellant to get his car out of his yard, and undertook to pick a piece of iron pipe three or four feet long lying on the ground near the car. Appellant told him not to pick the piece of pipe up. Cline did not pick up the pipe, but said to deceased as he (Cline) approached appellant: 'Mack, must I hit him?" Deceased replied "I believe I would." In the meantime one of the Cline boys walked behind appellant, and appellant said to him, "Now don't you all try to gang on me." State's witnesses testified that Ab. Cline did not pick up a piece of iron pipe. According to their version, just as deceased told Cline that he believed he would hit appellant if he were Cline, appellant called deceasd a dirty s—of a b—. Appellant testified that he did not use the epithet, but that it was used by deceased toward him. Deceased told appellant that nobody was afraid of him (appellant); that he might have a gun but he did not have the courage to use it. Deceased advanced rapidly toward appellant, with his hands clenched. Appellant testified that he thought deceased had a knife in his right hand. State's witnesses testified that deceased's hands were clenched but that he had no knife. As deceased advanced on appellant, appellant pulled his pistol and fired when deceased was within three or four steps of him. State's witnesses testified that the pistol was elevated and the shot passed over deceased's shoulder. Appellant testified that he fired for the purpose of trying to stop the advance of deceased, and that he had no intention of hitting him. Deceased continued to advance upon appellant. When appellant fired the second shot deceased was close to him. This shot took effect. Deceased

turned and walked away, and appellant did not attempt to fire another shot. After walking some fifteen or twenty steps deceased fell to the ground, and died in a short time. Deceased's wife came running to the scene of the shooting and requested that someone get a doctor. Appellant testified that he told her he would get a doctor as soon as he could get his car cranked. State's witnesses denied that appellant made this statement.

There had been no previous trouble of any character between appellant and deceased; neither had there been any trouble between appellant and the Clines.

After charging on self-defense, the court submitted an instruction covering the law of provoking the difficulty. The opinion is expressed that the issue was not raised. It was undisputed that deceased, immediately upon approaching appellant, charged him with having come to the Cline home for the purpose of imposing on the Cline boys and running the community. After appellant asked deceased to help him push the car out of the mud deceased declined to help him, and told him it was the law's business to take the car. Deceased finally told Ab. Cline that he would help him push the car out, but that he would not help appellant. Moreover, deceased told Ab. Cline that he believed he would hit appellant if he were Cline. It was at this point, according to state's witnesses, that appellant said to Ab. Cline: "Ab, you are a man; you are a man, but there is a dirty s— of a b— (referring to deceased)." State's witnesses testified that appellant elevated his pistol and fired the first shot over the shoulder of deceased. He did not shoot deceased until he continued to advance, and was practically on him. Deceased must have known that his remarks were calculated to anger appellant, and call forth some sharp retort on his part.

In Munden v. State, 64 S. W., 239, Munden and deceased had had a quarrel. After the deceased had advised Munden that he could not haul any more logs across his land, Munden said to deceased, in substance, that no man could keep him from hauling logs across deceased's land. Deceased said something that the witnesses were unable to hear and Munden called deceased a G— d— liar. Munden testified that before he called deceased a liar deceased had said "You d—d little s— of a b— you have been running over people but you can't run me off." After calling deceased a liar, Munden stepped back two or three feet and ordered deceased to stop. Deceased continued to approach him, with an axle handle, and Munden shot him. This court held that the issue of provoking difficulty was not in the case. In the present case the evidence, viewed from the state's standpoint, shows that deceased began the conversation that led up to the difficulty. There were no antecedent acts on the part of appellant. It was only after deceased had used language calculated to anger appellant that he used the epithet towards deceased. When deceased

approached appellant, as hereinbefore stated, appellant, according to the testimony of state's witnesses and appellant, shot over his shoulder. It was error to limit appellant's right of self-defense by a charge on provoking the difficulty. Branch's Annotated Penal Code, sec. 1955; Johnson v. State, 67 Texas Crim. Rep., 441, 149 S. W., 165.

Appellant testified as follows: "The reason for my shooting when I did, and shooting Mr. McCollum, was because I thought he was going to come right on up there to me and hurt me; with him like that, coming right up on me, and then there was Ab, standing behind there with a piece of pipe, and Jesse coming around behind me. Ab was there within striking distance of me, about as far as from you to me."

Appellant objected to the charge on the ground that in submitting self-defense the court failed to instruct the jury that he had the right to defend himself against what appeared to be a joint attack upon him by Ab. Cline, Jesse Cline and deceased. We think the exception was well taken. Where there is evidence, viewed from the accused's standpoint, that he was in danger from more than one assailant, the charge should instruct the jury that he had a right to defend against all or either. Branch's Annotated Penal Code, sec. 1934; Black v. State, 65 Texas Crim. Rep., 336, 145 S. W., 947.

Appellant further objected to the charge on the ground that it was too restrictive, in that it predicated his right to defend himself upon an assault by deceased with a knife or what appellant took to be a knife. State's witnesses testified that deceased had no knife in his hand, but advanced on appellant with clenched fists. There was testimony to the effect that immediately before approaching appellant deceased had a stick in his hand with which he was cleaning his shoes. On another trial the charge of the court should not restrict appellant's right to defend against an attack with a knife.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.