SAM LOUDER v. THE STATE.

No. 14635.   Delivered December 9, 1931.

The opinion states the case.

*John Morrison,* of Tyler, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

Appellant, who is a negro, killed Evans Johnson, a white peace officer. The homicide occurred at appellant's home. The state's testimony fixed the time of the killing at 5:30 a. m., on November 23rd, 1930, whereas, appellant testified that the transaction occurred between four and five o'clock in the morning. In any event, the witnesses for both the state and appellant agreed that it was dark. It was evidently the state's theory that deceased had gone to appellant's home for the purpose of arresting him. There is testimony in the record to the effect that on the evening before the homicide, after appellant had drunk some whisky, he and some other negroes had driven around town in an automobile with a negro woman who had nothing on but her night gown. One of the occupants of the car on the occasion in question testified that appellant said that they were not going to be arrested. According to the state's testimony, the parties drove around town until four o'clock in the morning, at which time appellant went to his home. The homicide occurred within an hour after appellant reached home.

Touching the circumstances surrounding the killing, a negro man who lived near appellant's home testified, in substance, as follows: At 5:30 a. m. he saw deceased at appellant's front door, and heard him call appellant. Appellant asked who was there, and deceased replied that he was the "law" and wanted to talk to him. Deceased then went to a side door, using a flash light to find his way. Appellant told deceased to come around further with the light. Appellant said to deceased: "I am getting mighty damn tired of you all coming here and arresting me when I haven't done anything." After making this remark appellant opened the door and fired six or seven shots at deceased in rapid succession. Deceased was standing four or five feet from the door when appellant began firing. Deceased was mortally wounded. He walked away from the house a short distance, and, falling to the ground, expired in a few minutes.

Immediately after the shooting appellant went to a neighbor's house in his night clothes. Borrowing some clothing from this neighbor, appellant fled. He was shortly thereafter apprehended by officers in some

woods four or five miles from the scene of the homicide. The wife of the negro from whom appellant borrowed the clothing testified for the state, in part, as follows: "The defendant, Sam Louder, was crying, and my husband asked him what was the matter. He says, 'Oh, Ross, I am in trouble.' My husband asked him what was the matter, and Sam says, 'Oh, I killed the law, or a cop or something up there.' My husband says, 'What—why did you do it?' He says, 'O, I don't know,' and he continued to cry. He said, 'Somebody came to my door and knocked, and I asked him who it was and he said it was the law.' He says, 'I had gone to bed,' and he says, 'Someone come to my door and knocked and I asked who it was, and he said its the law, and I commenced shooting.'"

Appellant testified that he was in bed asleep when his wife called him and told him that somebody was trying to get in the house; that he heard somebody kicking and knocking on the front door as if trying to break it open; that he asked who was there, but did not hear any answer; that he ran into another room and got his gun; that in the meantime the party came to the side door and threw something against the door, which shook the screen; that he opened the door and fired several times in an effort to frighten him; that he then ran out through his back door without knowing that he had hit anybody, and went to a neighbor's home; that he was scared and greatly excited. We quote from appellant's testimony as follows: "At the time I shot I did not know the man I shot at was white or black, and did not know whether or not he was an officer. He did not make any statement to me of any kind that would indicate who he was or that he had authority to be there. I didn't know, Judge, what his purpose was in coming there, from the way he was knocking and kicking on my doors. When I woke up in a fright, and when I went in there to get my gun I was going to run out of this door, and when he run up against the screen door that was when the shooting followed, and when I thought he had gone from there I run out of the back door. I didn't know whether it was the law or a hijacker or what. I thought it was somebody trying to get in, and I was trying to get out."

Appellant denied that he had made any statement to the effect that he was not going to be arrested. Further, he denied stating to deceased that he was getting tired of being arrested for nothing. He said he did not know deceased was an officer, and that he did not tell his neighbor that deceased had stated to him that he was an officer.

Appellant's wife gave testimony substantially the same as that of appellant.

Appellant had been working for the Southern Ornamental Iron Works in Fort Worth for a number of years. Many witnesses, most of them being white men, testified that appellant's general reputation for being peaceable and law-abiding, as well as for truth and veracity, was good. Among these witnesses were some of appellant's employers. The only

testimony touching any violations of the law by appellant previous to the homicide is found in the admission of appellant that he had on one occasion paid a fine for drunkenness.

The court gave an instruction covering the law of self-defense. Appellant's requested charge to the effect that if the jury believed deceased was endeavoring to arrest appellant without lawful authority, appellant was entitled to use all force necessary to resist the arrest was submitted to the jury. The court also instructed the jury, at appellant's request, that a person attempting to make an illegal arrest is a trespasser. Again, appellant's requested instruction to the effect that if appellant believed deceased was attempting to gain entry into his home for the purpose of committing the crime of theft or burglary he should be acquitted, was submitted.

The court declined to submit appellant's requested instruction to the effect that deceased was without lawful authority to arrest appellant. There was nothing in the court's charge advising the jury that deceased had no lawful authority to arrest appellant. There was no evidence to the effect that deceased had a warrant of arrest, or that any conditions were present which would have authorized the arrest of appellant without a warrant. As heretofore stated, it was evidently the state's theory that deceased went to the house to arrest appellant, and that appellant killed deceased pursuant to a previously formed design to prevent his arrest at all hazards by any officer. If the officer was attempting to arrest appellant, his action, under the evidence, was unwarranted. The court should have instructed the jury, in substance, that if deceased was attempting to arrest appellant, such attempted arrest was illegal. Branch's Annotated Penal Code, sec. 1982; Russell v. State, 37 Texas Crim. Rep., 314, 39 S. W., 674; Cortez v. State, 44 Texas Crim. Rep., 169, 69 S. W., 537; Miers v. State, 34 Texas Crim. Rep., 161, 29 S. W., 1074.

Aside from self-defense, and the right to resist an illegal arrest, the only other defensive theory submitted in the charge related to appellant's right to prevent an entry into his house for the purpose of committing theft or burglary. Appellant sought, by a requested special charge, to have the jury instructed on the law governing the right to defend against an unlawful entry into his home. Appellant testified that he thought someone was trying to break in his home when he fired the fatal shots. His testimony clearly raised the issue covered by the special charge. The charge relating to the right to prevent an entry for the purpose of theft or burglary was too restrictive under the evidence. There was no question as to the lawful possession and occupancy of the house by appellant. He had the right to defend his home against an illegal invasion of any character. Mack v. State, 97 Texas Crim. Rep., 583, 263 S. W., 912, and authorities cited; French v. State, 55 Texas Crim. Rep., 538, 117 S. W., 848.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.