## L. PETTY V. THE STATE.

No. 16655.   Delivered April 25, 1934.

The opinion states the case.

*Tatum & Strong,* of Dalhart, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of an aggravated assault and battery, and his punishment assessed at a fine of $800, and one year imprisonment in the county jail.

The testimony shows that in the early part of June, 1933, the appellant was ill and intended to go to Amarillo for treatment.   Mr. Moore agreed to let his son, Jim, go to appellant's home and look after his property during the time the appellant was in the hospital.   While the appellant was in the hospital at

Amarillo, Clarence Moore, the father of Jim Moore, visited appellant and demanded some money. The appellant gave him $2.00 at one time and $6.00 at another time. On Sunday morning, September 3, 1933, Jim, son of Clarence Moore, appeared at the appellant's home, and after some few moments informed the appellant that, he the appellant, owed him, Jim Moore, $10.50 and demanded payment. The appellant told Jim Moore that he didn't owe him anything, that he had paid his father $8.00 and if he owed anybody anything he owed the father with whom he had made the agreement, but Jim Moore insisted upon payment and when appellant declined, he said, "You are going to get hell beat out of you," left the house, went to his car and started in the direction of his home. Within 30 or 40 minutes he returned with his father, Clarence Moore, and they drove up near the appellant's home, entered the same, and demanded payment of the money, or, in lieu thereof, some oats. Quite a heated discussion ensued which showed that there was considerable ill feeling existing. The appellant testified as follows:

"I said if I do owe you $10.50 I can't pay you; I haven't any money. They said, 'We will take oats.' Clarence Moore said to Jim 'Go load up a load of oats,' and repeated that several times and kept coming closer to me until he was within 6 inches of me when I pushed him away. He looked very white and talked very loud and had his hands clenched. I gave him a shove and said, 'Get out of here.' I thought he was going to jump on me. It looked like he wanted to hold me while Jim was loading the oats. I struck him with the knife because I thought he was going to strike me. I wasn't going to let them load my oats and take it. I had no intention of killing Clarence Moore at any time. I would not have struck him if he hadn't followed me up like he did and in the manner in which he did. I thought from his threats he would jump on me at the time I struck. I just thought it had come to the point where both of them were going to jump on me. They were getting very close to me. I figured they would do me bodily harm. If there had just been one it would have been different. It was the belief on my part that they would carry out the threats made by Jim that caused me to use that knife."

The appellant urged a number of objections to the court's main charge, one of which is because the court's charge was too restrictive and limited appellant's right of self-defense to an unlawful attack or threatened attack by Clarence Moore alone, when he was entitled to a charge that he had a right to defend himself against the hostile demonstration or threatened attack

of Jim Moore and Clarence Moore or either of them. We think the objection was well taken. When there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or threatened attack at the hands of more than one assailant, the charge should instruct the jury that he had a right to defend against either or all of them, and in support of the views herein expressed we refer to the following cases, to-wit: Black v. State, 65 Texas Crim. Rep., 336, 145 S. W. 944; Carson v. State, 57 Texas Crim. Rep., 394; Jones v. State, 39 S. W. (2d) 76.

The appellant also objected to the court's main charge because the court failed to instruct the jury that the appellant had a right to eject or expel anyone from his home whose deportment or demeanor was hostile, offensive, or who was creating a disturbance, provided he used no more force than was reasonably necessary to effect that purpose. In addition to said objection, the appellant presented to the court a special charge on that phase of the case with the request that it be submitted to the jury, which the court refused to do. We think the appellant's contention is correct. A man's private home is his castle, no matter how humble it may be, and he has a legal right to eject or expel anyone who creates a disturbance therein or whose deportment or demeanor is hostile or offensive, provided he uses no more force than is necessary to accomplish that purpose, and in this connection we refer to the following authorities, to-wit: McCray v. State, 38 Texas Crim. Rep., 609; Turner v. State, 16 Texas App., 378; Sargent v. State, 35 Texas Crim. Rep., 325. While the appellant's special requested charge is not a clear presentation of that phase of the case, yet it was sufficient to call the court's attention to the omission in his main charge, and the court should have either reformed his charge or given one clearly and distinctly presenting that issue of the case.

For the errors herein pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.