RITA CLAIRE MYERS V. STATE.

No. 26,849. March 31, 1954.

*D'Unger, Berger & Brown,* by *Jerry D'Unger,* Corpus Christi, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The offense is murder; the punishment, ten years in the penitentiary.

The undisputed testimony shows that appellant shot the deceased with a .22 caliber revolver at appellant's apartment about 2:30 P. M. on September 12, 1953.

Dr. Pilcher testified that the bullet entered the right side of deceased's back and that such wound caused the death of the deceased. No weapons were found on or near the body of the deceased, and there was no question as to the legal possession and occupancy of the apartment by the appellant.

The state's testimony shows that the deceased made some effort to get in the back door of appellant's apartment, while she was telling him to leave, and a few minutes later when deceased stepped off the porch leaving, appellant came out of her apartment on to the porch and shot him in the back.

Appellant, testifying in her own behalf, stated that she saw the deceased's automobile across the street from her apartment and "I knew I was in danger and ran through the house," * * * "I grabbed my gun and latched" the back screen door "just as he was about to walk in." I said "What do you want?" He said "Let me in." I said "No, I don't want you in"; that she showed him the gun and said "Go away, I don't want to shoot"; that deceased then began cursing and "tearing on the back door"; that the deceased "pulled the handle off the door and loosened the latch, I had to shoot"; that the deceased jumped to one side of the screen door; that Mr. and Mrs. Kearney, who lived next door in the same building, came to the door and asked what was going on and "I said I wanted him to leave and

he wouldn't do it"; that "He pretended he was leaving, appeared to leave. * * * I knew how he was and figured he would be coming back, I stood by the door, and sure enough he came back." "Snuck up, flattened himself, he knew I couldn't lock my back door, knew it was broken." "Snuck back, he just waited by the side of the door, and I saw him, he loosened the latch from the door, and tried to get in, that's when I fired the second time, when he lunged and tried to get in;" that she did not intend to kill the deceased "but towards the last when he was insisting on coming in, I thought I might hit him in the arm or hand, and he would go away"; "I had no intention of harming him, I just thought if I could graze him on the arm he would go."

Appellant insists that her testimony raised the issue of defense of habitation separate and apart from the apprehension of death or serious bodily injury. Upon this ground, she sought to have the jury instructed in effect that she had the right to control her home and exclude anyone the right to enter therein except with her consent, and if they found that at the time she fired the fatal shot the deceased was attempting to enter her home against her will and after being warned to stay out, then appellant had the right to use all reasonable and necessary force to prevent his entrance and if, after she had exhausted all other reasonable means, she killed the deceased to prevent his entering her home to acquit her.

The court submitted the issue of self-defense and instructed the jury to acquit if it appeared to appellant that she was in danger of death or serious bodily injury.

Also, the jury was instructed that she had the right to use whatever force was necessary to protect her property, and if in doing so she became in danger of death or serious bodily injury, she, acting upon the appearance of such danger, had the right to kill the deceased to protect her person and maintain the possession of her home.

But nowhere in the charge was the jury instructed that in the absence of any apprehension of death or serious bodily injury, appellant had the right to shoot the deceased if in doing so she used no more force than appeared to her to be necessary to prevent his entering her home, and she having resorted to all other reasonable means to prevent such entry against her will.

We conclude that appellant was entitled to have the jury

instructed as to the provisions of Arts. 1224 and 1227, P.C., applicable to the issue raised by her testimony. Wells v. State, 63 Tex. Cr. R. 618, 141 S.W. 96; French v. State, 55 Tex. Cr. R. 538, 117 S.W. 848.

In addition to the above error, we find herein proof of extraneous acts of misconduct against the accused who had not put her reputation in issue. Proof of prior sexual relations, if any, between the accused and the deceased was admissible by virtue of Art. 1257a, V.A.P.C. Milton v. State, 122 Tex. Cr. R. 325, 55 S.W. 2d 95; Wheeler v. State, 156 Tex. Cr. R. 140, 239 S.W. 2d 105.

But proof that the appellant's son had come home and found a married man in his mother's bedroom and had reported such fact to the welfare worker was not admissible unless it was shown that the man was the accused. The trial court was in error in holding such admissible on the issue of appellant's credibility.

For the reasons assigned, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

MORRISON, Judge (Concurring).

I do not agree that the testimony in this case raised the issue of defense of habitation. Appellant testified that she acted in her own self defense, which was properly submitted to the jury in the charge. This case, as I view it, comes squarely within the rule expressed in Ross v. State, 75 Tex. Cr. Rep. 59, 170 S. W. 305; Richardson v. State, 91 Tex. Cr. Rep. 318, 239 S. W. 219; Tait v. State, 97 Tex. Cr. Rep. 119, 260 S. W. 584; Beggs v. State, 124 Tex. Cr. Rep. 1, 60 S. W. 2d 241; and Ashworth v. State, 148 Texas Crim. Rep. 561, 189 S. W. 2d 875, which holds that the evidence there presented raised the issue of self-defense but did not raise the issue of defense of habitation.

But I do agree that this conviction must be reversed because of the admission of proof of extraneous acts of misconduct on the part of the appellant.