Jerry Donald **SLEDGE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 47741.

Court of Criminal Appeals of Texas.

April 3, 1974.

Rehearing Denied April 24, 1974.

Frank Maloney and Kenneth E. Houp, Jr. (On appeal), Austin, for appellant.

Emory Walton, Dist. Atty., Eastland, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for assault with intent to murder with malice. A jury having found appellant guilty of this offense, the punishment was assessed by the court at twenty (20) years' confinement in the Texas Department of Corrections.

At the outset, we shall consider appellant's contention that the trial court erred in refusing to submit his special requested charge on defense of habitation after such charge had been presented in writing to the court.

The record reflects that the complaining witness, Gilbert Nail, was the husband of appellant's stepdaughter. Several months prior to the incident, appellant had been injured while driving a car belonging to his

stepdaughter, Trudy Nail. On the day of the incident, Trudy was induced to endorse a $500 check which appellant had received in settlement of the accident. In two separate exchanges, Trudy requested that part of the check be used to repay a loan which Gilbert had made to appellant. Upon being told that such funds as were left after payment of attorneys' fees would be used by appellant in search of a new job, Trudy became upset and departed appellant's home after twice remarking that she was going to tell Gilbert when he came home and that "you'll all be sorry."

Gilbert Nail is described by the record as being six feet three inches tall and weighing between 210 and 220 pounds. Appellant suffered from diabetes and had been under a doctor's care for several months as a result of a head injury he received in the automobile accident. Appellant testified on cross-examination that a week prior to the incident he and Nail had engaged in a dispute at a local hospital. The dispute ended with an agreement by both parties to stay away from each other's home. Nail terminated the encounter by saying, "All right, because if you do, something bad is going to happen."

On the evening of the incident, appellant testified that he was in his kitchen assisting with the preparation of dinner. Nail's car stopped abruptly in front of appellant's home and he emerged from it and "almost" ran to the front door, leaving the engine running and the door ajar. Describing Nail's demeanor, appellant said that he was "red in the face," that his eyes were not "rational," and that "he was mad." Nail then reached the porch and struck the front door three or four blows of sufficient force to knock it open. Appellant called out, "Gilbert, don't come in this house"; to which Nail responded, "Dammit, Don" or "Don, dammit." According to appellant, Nail then stepped into the house, and appellant fired a shot from a .22 caliber rifle which had been left leaning against the wall by his stepson in anticipation of rabbit hunting that night. Nail received a wound in the neck and fell backwards across the threshold. As with the other details just discussed, testimony regarding whether Nail's feet came to rest inside or outside of the house was conflicting. All of the material parts of appellant's testimony were corroborated by his stepdaughter, Cheryl Preston. Ranger Police Chief J. C. "Red" Rose also testified that when he arrived Nail's feet were inside the house. Nail denied entering the house and was supported in this position by the testimony of his wife, who admitted she did not see the shot fired.

■ We hold that these facts, as elicited from appellant and his stepdaughter, were sufficient to raise the issue of defense of habitation. Article 1142(4), Vernon's Ann. P.C., provides:

"Violence used to the person does not amount to an assault or battery in the following cases:

\*   \*   \*   \*   \*   \*

"4. In preventing or interrupting an intrusion upon the lawful possession of property." See also: Article 1227, Vernon's Ann.P.C.[1]

■ Although this court has not had many occasions of late to consider the defense of habitation,[2] it is well settled that a defendant has a right to defend against an unwarranted intrusion of his home, and that when this issue is raised, the trial

---

1. Article 1227 concerns justifiable homicide in defense of property and is the basis of many of the decisions concerning defense of habitation. Since the defense is the same, we see no reason to distinguish these cases on the ground that the wound inflicted was fatal We note that any confusion in this area has been obviated by the new penal code, which has a single chapter on "Justification Excluding Criminal Responsibility." See Secs. 9.41–9.44, Texas Penal Code (1974).

2. The one recent case is Pellerin v. State, 454 S.W.2d 744 (Tex.Cr.App.1970), holding that the evidence did not raise the issue.

court should charge on his right to defend against this kind of attack. 4 Branch's Ann.P.C., Sec. 2154, p. 487 (1956) and the cases therein cited.[3] In Myers v. State, 159 Tex.Cr.R. 579, 266 S.W.2d 380 (1954), the deceased was refused admittance to appellant's home, whereupon he tore at the door and cursed. The deceased had stepped off the porch when he was shot in the back by the appellant. Under the facts perhaps more extreme than those of the instant case, this court reversed for failure to submit a requested charge on defense of habitation. See also: Louder v. State, 119 Tex.Cr.R. 438, 44 S.W.2d 719 (1931).

It is recognized that the right to defend one's home is co-extensive with the right of self-defense. Mack v. State, 97 Tex.Cr.R. 583, 263 S.W. 912 (1924); 4 Branch's Ann.P.C., Sec. 2096, p. 411 (1956). Therefore, under the law at the time of this incident, a person was not required to retreat from his home before taking action against an intruder.[4] As with self-defense, it is required that the person defending his habitation act upon a reasonable fear. This reasonableness is, of course, determined by the facts as they appeared to the defendant at the time. Newman v. State, 58 Tex.Cr.R. 443, 126 S.W. 578 (1910); 29 Tex.Jur.2d, Homicide, Sec. 300, p. 560 (1961). A further requirement is that the defendant first exhaust all other means before resorting to the use of deadly force. However, if the conduct of the person invading the defendant's home is such as to produce a reasonable expectation or fear of death or other serious bodily injury, then he is not required to resort to other means, but may act at once and with the most effective means. Myers v. State,

supra; Wells v. State, 63 Tex.Cr.R. 618, 141 S.W. 96 (1911); 4 Branch's Ann.P.C., Sec. 2152, p. 486 (1956).

In the instant case the testimony of the appellant and his stepdaughter indicates that his acts comported with the requirements imposed on the defense of habitation. Whether there are additional requirements of a protest or warning from the defendant before he acts or that the intruder actually be inside of the defendant's house are questions unnecessary to the disposition of this appeal. In the instant case there is testimony that appellant warned Nail not to enter and that Nail did in fact enter the house.

The State contends that, nevertheless, appellant's rights were adequately protected by the charge on self-defense which was submitted to the jury by the trial court. Yet, in *Newman*, supra, this court reversed for failure to charge on defense of habitation even though charges on self-defense and defense of family had been submitted. 126 S.W. at 581. It has also been said:

"If the evidence has any tendency to raise the issue of defense of the person as well as defense of property, the court must give a separate charge on each theory." 29 Tex.Jur.2d, Homicide, Sec. 300, p. 561 (1961).

We, therefore, hold that the charge on self-defense did not render a separate charge on defense of habitation unnecessary.

The State also makes two attacks on the charge itself. First, the State

---

3. In Beggs v. State, 124 Tex.Cr.R. 1, 60 S.W.2d 241 (1933), this court held that the evidence did not raise the defense of habitation and distinguished Louder v. State, 119 Tex.Cr.R. 438, 44 S.W.2d 719 (1931); Mack v. State, 97 Tex.Cr.R. 583, 263 S.W. 912 (1924); Newman v. State, 58 Tex.Cr.R. 443, 126 S.W. 578 (1910); and French v. State, 55 Tex.Cr.R. 538, 117 S.W. 848 (1909). Whether Beggs was an effort to restrict the defense of habitation is not clear. In any

event, the earlier line of cases prevailed as is evidenced by their continuing vitality after *Beggs* was decided. See, e. g., Myers v. State, 159 Tex.Cr.R. 579, 266 S.W.2d 380 (1954).

4. It is not necessary to the decision of this case to decide whether the new penal code now requires any duty to retreat in this situation.

**730**

argues that any error was waived by the failure of the appellant to file a written objection to the charge submitted. The short answer to this contention is that Article 36.15, Vernon's Ann.C.C.P., does not require an objection to the charge when a special requested instruction calls the court's attention to an error or omission in the charge.[5] In the instant case the appellant submitted the folowing special requested charge which was refused by the trial court:

> "You are instructed that under our law a man need not retreat from his home and that he has a right to defend said home against unlawful intruders."

As an additional attack on the requested charge, the State urges that it is an incorrect application of the law as stated in Article 1142(4), Vernon's Ann.P.C. While the charge might have been more definitive,[6] we hold that as in Petty v. State, 126 Tex.Cr.R. 185, 70 S.W.2d 718 (1934), the special requested charge was adequate to call the court's attention to the omission of a charge on defense of habitation.

■ And as in *Petty* and the other cases in which the evidence raised the issue of defense of habitation, we hold that the failure of the trial court to so charge upon proper request is reversible error. That the jury might have resolved this issue against the appellant is entirely irrelevant to our present consideration since we are here concerned with the right to have the matter submitted in the first place.

For the reasons stated, the judgment is reversed and the cause remanded.

5. Article 36.15, Vernon's Ann.C.C.P., provides in part:
   "Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The court shall give or refuse these charges. The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses."

6. For examples of charges on the defense of habitation, see Willson's Criminal Forms, Sec. 3588, pp. 587–588 (1966 Morrison and Blackwell ed.), and 4 Branch's Ann.P.C., Sec. 2154.1, p. 489 (1956).