**Maurice SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60854.**

Court of Criminal Appeals of Texas,
Panel No. 3.

May 12, 1982.

1. We note initially the difficulty in comprehending the record. Continued reference to

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty. and John H. Hagler, Jim Walker and Rick Russell, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, W. C. DAVIS and McCORMICK, JJ.

## OPINION

McCORMICK, Judge.

Appellant was indicted for murder. A Dallas County jury found him guilty of voluntary manslaughter. The trial court assessed punishment at ten years in the Texas Department of Corrections.[1]

The State's evidence showed that on November 16, 1977, after midnight, appellant was involved in an argument by a pool table in a Dallas beer joint. During the argument, appellant was struck with a pool cue by a person other than the deceased. The appellant then left with his brother, Rickey Sanders. Several men followed the appellant outside the beer joint. The deceased was one of those men. The State's evidence showed that appellant ran across the beer joint parking lot and turned around to face his pursuers. The men following appellant and his brother were on the opposite side of the parking lot. The argument continued across the lot. Racial epithets were exchanged. Appellant's brother handed appellant a rifle and appellant invited the others to meet him in the middle of the lot. Appellant fired three shots. The third shot killed the deceased.

Appellant testified that he was struck in the head with a pool cue in the bar and tripped as he attempted to exit the bar. He then testified:

"When I came out the door, I was staggering, and I know they was behind me, because you know, I kept hearing noise behind me, and so I was just running, and all of a sudden Rickey shows up, and then he handed me the gun, and I

"here" and "there" make it difficult to follow the events.

said, 'You all go,' and I just turned around and shot it, you know, only to scare them, not to hurt nobody, just to scare them, if I could get away. And then we ran on to the apartments."

He later again testified that he was not attempting to hurt anyone. He also stated in reply to a question from the prosecutor:

"Q. You were in fear of your life from these people; is that right?

"A. Sir?

"Q. I say you were in fear of your life from all these people?

"A. I was trying to get away from them to save my life."

Appellant testified he only fired once. He also testified that when he fired he was thirty to thirty-five feet from the people who came from the bar.

On cross-examination, appellant testified that he ran outside and "Rickey was coming towards me with a gun and they was running right behind me. And I wasn't trying to hurt nobody. * * * And all I was trying to do was protect myself. Thats all it was * * * I was running. I was trying to get away from those people." Hospital records dated November 17, 1977, showed appellant suffered a concussion and myocardial contusion.

Appellant's brother, Tommy Sanders, testified that he saw appellant come out of the "cafe with some people hollering, arguing at him. * * * He was backing up kind of falling down. He were coming out the place backing up, falling down, trying to get them other people off him." He went on to say that the appellant appeared injured and then Rickey (the brother in the bar) "ran up and give him the gun, and then only thing I know, he turned around and fired." Tommy Sanders later testified that appellant fired while "trying to get him off of him (appellant)". It is not clear who the first "him" refers to. Apparently it refers to one of the persons pursuing appellant. He testified that the white people were yelling and hollering and chasing appellant with a pool cue. The cue apparently was carried by the man who had struck appellant.

The jury was instructed on the issue of self-defense:

"Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant shot Billy Wayne Sanderson as alleged, but you further believe from the evidence, or you have a reasonable doubt thereof, that at the time he did so the defendant reasonably believed that Billy Wayne Sanderson was using or attempting to use unlawful deadly force against him, and that he reasonably believed, as viewed from his standpoint alone, that the use of force and the degree of force used were immediately necessary to protect himself against Billy Wayne Sanderson use or attempted use of deadly force, and that a reasonable person in the defendant's situation would not have retreated, you will find the defendant not guilty.

"However, if you believe from the evidence beyond a reasonable doubt that, at the time and place in question, the defendant did not reasonably believe that Billy Wayne Sanderson was using or attempting to use unlawful deadly force against him, or that the defendant did not reasonably believe that the use of force and the degree of force used were immediately necessary to protect himself then his use or attempted use of deadly force, or that a reasonable person in the defendant's situation would have retreated, you will find against the defendant on this plea of justification."

The jury was further instructed that:

"If you find from the evidence that the defendant, Maurice Sanders, fired his rifle only to scare the deceased, or his companions, and did not intend to inflict serious bodily injury upon anyone, or if you have a reasonable doubt thereof, you will acquit the defendant."

Appellant initially claims the court erred in restricting appellant's right of self-defense. Appellant contends that the trial court should have instructed the jury on the law of self-defense from multiple assailants. In *McCuin v. State*, 505 S.W.2d 831 (Tex.Cr. App.1974), the Court said:

"Under our view of the record, we are of the opinion that the trial court fell into error in failing to charge on the right of self-defense against multiple assailants. In 4 Branch's Annotated Penal Code (2d ed. 1956, Stout) Sec. 2113, p. 441, the author announced the rule in these words: 'If there is evidence that more than one assailed defendant, the charge of the court is too restrictive if it confines the right of self-defense to the acts of deceased.'

"One of the cases cited in the text, *Wilson v. State*, 140 Tex.Cr.R. 424, 145 S.W.2d 890, 893 (1940), is sufficient to illustrate the rule:

" 'When there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the court should instruct the jury that he had a right to defend himself against either or both of them. In support of the views herein expressed we refer to the following cases: *Petty v. State*, 126 Tex.Cr.R. 185, 70 S.W.2d 718; *Smart v. State*, Tex.Cr.App., [140 Tex.Cr.R. 664], 146 S.W.2d 397, opinion delivered Dec. 4, 1940.'

See also, 29 Tex.Jur.2d, Homicide, Sec. 317, p. 605 (1961) and cases therein cited.

"Because the Court's charge on the law of self-defense unduly limited the jury in passing upon appellant's right of self-defense, the judgment of the trial court is reversed and the cause is remanded. This disposition makes it unnecessary for us to pass upon the other grounds of error brought forward by the appellant."

See *Black v. State*, 65 Tex.Cr.R. 336, 145 S.W. 944 (1912), for a detailed explanation of the rationale behind such a multiple assailant charge. See also *Matthews v. State*, 582 S.W.2d 832 (Tex.Cr.App.1979).

Here the testimony showed an attack by multiple assailants. Appellant was entitled to a charge on self-defense as it relates to multiple assailants.

The State contends appellant was not entitled to any charge on self-defense because appellant testified that he was merely shooting to scare his attackers and did not intend to shoot anyone.

In *Merritt v. State*, 85 Tex.Cr.R. 565, 213 S.W. 941 (1919), the appellant was struggling with the deceased's husband when a gun held by appellant discharged, killing the deceased who was standing outside the house. Judge Lattimore, in writing for the Court, said:

"If appellant was placed in such position by the circumstances as gave him the legal right to defend against an unlawful attack on the part of Johnson, causing him to have a reasonable expectation or fear of death or serious bodily injury, his right of self-defense would inure regardless of whether the discharge of the pistol was accidental or otherwise." 213 S.W. at 942.

In a situation such as this, the shooting of the victim does not have to be intentional in order to warrant an instruction on self-defense. This is shown in *Sullivan v. State*, 365 S.W.2d 810 (Tex.Cr.App.1963), where the trial court submitted an instruction on self-defense even though the defendant testified she had no intention to kill or hurt the deceased. See also *Halliburton v. State*, 528 S.W.2d 216 (Tex.Cr.App.1975); *Garcia v. State*, 492 S.W.2d 592 (Tex.Cr.App.1973); *Jackson v. State*, 66 Tex.Cr.R. 469, 147 S.W. 589 (1912); *Carr v. State*, 48 Tex.Cr.R. 287, 87 S.W. 346 (1905); *Wesley v. State*, 65 S.W. 904 (Tex.Cr.App.1901).

Having found that appellant was entitled to an instruction on self-defense relating to multiple assailants, we find that there was reversible error. Thus we need not discuss appellant's remaining ground of error.

The judgment is reversed and the cause remanded.