**Jorge Eduardo HINOJOSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–86–556–CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 7, 1988.

Rehearing Denied Feb. 11, 1988.

Discretionary Review Refused May 4, 1988.

Mark Alexander, Joseph A. Connors, III, McAllen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before KENNEDY, NYE and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

The appellant, Jorge Eduardo Hinojosa, was tried by a jury and convicted of murder. He was sentenced to forty-five years confinement and assessed a fine of $10,-000.00. The appellant brings error on the ground that the trial court refused to charge the jury on self-defense. We reverse the judgment of the trial court and remand the case for a new trial.

Uncontroverted testimony indicates that the appellant was standing with a small group of his friends on one side of a vacant lot and the deceased, Reymundo Sendejo, was standing with another small group some ten to fifteen yards away on the opposite end of the lot. Verbal threats were made by one or both groups, and a number of gunshots were fired, one of which, fired by the appellant, hit the deceased in the throat and killed him.

The appellant testified that he wandered by the vacant lot looking for another friend, not associated with the groups, to help the friend fix his car. When appellant walked past the group on his side of the lot, members of the opposing group shouted that they were going to beat him up for getting involved with the first group. At this point, the group on appellant's side ran away. Appellant, however, did not at first believe the threats and stayed in the alley on his side of the vacant lot. He observed that some members of the opposing group were carrying sticks and pipes and one ("Prieto") was carrying a handgun. Prieto pointed the handgun in appellant's direction and appellant jumped behind a light post for protection. He heard one or two shots. Appellant then fired once without aiming, "just to scare them, so they wouldn't harm me," because he was afraid the other group would "beat me up or shot [sic] me." He then ran from the scene.

In his first two points of error, appellant complains of the court's failure to include

an instruction on self-defense in the charge. He objected to the charge and filed a written requested instruction. The court overruled his objection and included no instruction on self-defense. *Dyson v. State*, 672 S.W.2d 460 (Tex.Crim.App.1984) explains the duty of the trial court to charge the jury on self-defense:

> It is well settled that if the evidence raises the issue of self-defense, the accused is entitled to have it submitted to the jury. *Semaire v. State*, 612 S.W.2d 528 (Tex.Cr.App.1980). A defendant is entitled upon timely request to an instruction on every affirmative defense raised by the evidence, "regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief." *Warren v. State*, 565 S.W.2d 931, 933 (Tex.Cr.App.1978); see also *Horne v. State*, 607 S.W.2d 556 (Tex.Cr.App.1980). The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Warren v. State*, supra; *Cain v. State*, 549 S.W.2d 707 (Tex.Cr.App.1977).

*Dyson*, 672 S.W.2d at 463.

The right to self-defense is set out in Tex. Penal Code Ann. § 9.31 (Vernon 1974), as follows:

> (a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

§ 9.32 (Vernon Supp.1987) further provides:

> A person is justified in using deadly force against another:
>
> (1) if he would be justified in using force against the other under Section 9.31 of this code;
>
> (2) if a reasonable person in the actor's situation would not have retreated; and
>
> (3) when and to the degree he reasonably believes the deadly force is immediately necessary:

> (A) to protect himself against the other's use or attempted use of unlawful deadly force. . . .

■ Under the appellant's version, deadly force was being used against him by members of the opposing group and appellant's actions were in defense against that force. When the accused is attacked by multiple assailants, the courts have held that he has the right to a charge on self-defense as it relates to multiple assailants. *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App.1985); *Brown v. State*, 651 S.W.2d 782, 784 (Tex.Crim.App.1983); *Sanders v. State*, 632 S.W.2d 346, 348 (Tex.Crim.App.1982); *Tanguma v. State*, 721 S.W.2d 408, 411 (Tex.App.—Corpus Christi, 1986, pet. ref'd). The facts of *Sanders* are similar to the present case. While in a bar with his brother, defendant was hit with a pool cue by a person other than the victim. The defendant and his brother then ran out as a crowd from the bar chased them into the parking lot and yelled at them. The defendant's brother tossed him a gun and the defendant, intending only to scare the crowd so that he could get away from them, fired a shot that killed the victim. *Sanders*, 632 S.W.2d at 346–47. The unlawful deadly force against which the defendant may protect himself need not have been manifested by the victim, as *Brown* held that "the appellant had a right to act in self-defense against [the victim] if he was in fear of death or serious bodily injury at the hands of either [the victim] or [another assailant]." *Brown*, 651 S.W.2d at 784. In the present case, the appellant was put in fear of death or serious bodily injury by a combination of the threats made by the opposing group, the weapons they carried and the gunshots he heard. He was thus entitled to use deadly force, if at all, against the entire group of assailants, including the deceased.

However, the appellant is only entitled to use deadly force in self-defense under § 9.32 if a reasonable person in his situation would not have retreated. In *Sternlight v. State*, 540 S.W.2d 704, 706 (Tex.Crim.App.1976), the court held that an instruction on the law of retreat requires the jury "in deciding the issue on self-defense

to determine whether the [defendant] had the ability and opportunity to retreat considered as part of all of the circumstances of the moment." Quoting the Practice Commentary to § 9.32, the court in *Valentine v. State*, 587 S.W.2d 399, 402 (Tex. Crim.App.1979) (emphasis added) agreed that:

> "[a] person ought to retreat, if he can do so safely, before taking human life.... By measuring the existence and extent of the retreat obligation in terms of the ordinary person in the actor's situation, it is contemplated that *the factfinder will make a moral judgment* on whether the defendant in a specific case ought to have retreated before threatening or using deadly force."

The factfinder is given the responsibility to determine whether appellant's failure to retreat was reasonable under the circumstances.

■ The State argues in the present case that a reasonable person would have retreated at the time appellant's friends ran from the vacant lot, before violence became imminent and when only verbal threats had been made. However, appellant is not put to a reasonable person election to retreat or fight until the need for deadly force in defense becomes apparent. In *Young v. State*, 530 S.W.2d 120, 123 (Tex.Crim.App.1975), the defendant had an altercation with the deceased which put him in fear of his life. However, the defendant wanted to discuss the matter further with the deceased and went to his house, but armed himself for protection. The deceased then threatened the defendant with a broom and started to kick him, at which time the defendant moved back and shot the deceased. The court held that the defendant was not "confronted with need for the use of deadly force until the deceased made such use imperative. Thus, not until after the situation arose as to the necessity of using deadly force would appellant be faced with the decision as to whether to retreat." *Id.*, 530 S.W.2d at 123. In the present case, appellant did not believe the opposing group's threats and was not put in fear of deadly force being used against him until he saw the opposing

group's weapons and heard gunshots. The jury could have found that a reasonable person would not then have retreated.

The cases on which the State relies to prove that retreat was available as a matter of law can be distinguished from the present case because they all involve situations where there was also no evidence to show that the defendant was threatened with deadly force and the reasonableness of retreating was tied to the unreasonableness of the underlying fear. *Werner v. State*, 711 S.W.2d 639, 645 (Tex.Crim.App. 1986); *Reece v. State*, 683 S.W.2d 873, 874 (Tex.App.—Houston [14th Dist.] 1984, no pet.); *Dyson v. State*, 654 S.W.2d 577, 579 (Tex.App.—Fort Worth 1983), *affirmed*, 672 S.W.2d 460 (Tex.Crim.App.1984); *Ogas v. State*, 655 S.W.2d 322, 324 (Tex.App.—Amarillo 1983, no pet.); *Bray v. State*, 634 S.W.2d 370, 372–73 (Tex.App.—Dallas 1982, no pet.). Moreover, the standard, if there is one, for the court to use in determining the reasonableness of retreat before submitting the question to the jury appears to be whether "appellant had a clear and unbridled avenue to escape ... to which appellant had easy access." *Dyson*, 654 S.W. 2d at 579; *see also Reece*, 683 S.W.2d at 874. An armed and firing aggressor only yards away from him in an open lot hardly leaves the appellant with a clear and unbridled avenue to escape to which he has easy access. While the appellant did first hide behind a lamp post, that was only a temporary position of safety and the appellant could hardly be expected to make that his position of retreat and remain there until his assailants reached him.

■ In the present case, it was error for the trial court not to charge the jury in accordance with appellant's request on self-defense against multiple assailants. The presence of any harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Although the evidence against the appellant is substantial, we cannot say that he suffered no harm by

the trial court's failure to charge on self-defense. *See Hayes v. State,* 728 S.W.2d 804, 808 (Tex.Crim.App.1987). Appellant's first two points of error are sustained.

◼ In points of error five through seven, appellant complains that the trial court erred in the punishment phase of the trial by submitting a charge to the jury on the law of parole in accordance with Tex.Code Crim.Proc.Ann. art. 37.07, § 4(a) (Vernon Supp.1987). Appellant timely objected to the charge on the ground that it violates the Constitution of the State of Texas and the separation of powers doctrine. The Texas Court of Criminal Appeals recently held that the form mandated by art. 37.07, § 4 is unconstitutional because it violates the separation of powers doctrine and due course of law. *Rose v. State,* No. 193–87 (Tex.Crim.App. November 12, 1987) (not yet reported). Accordingly, we hold that it was error for the trial court to charge the jury on the law of parole. Since the appellant objected to the charging error, we must ask if it caused him any harm. *Arline,* 721 S.W.2d at 351. The punishment for murder was explained in the charge to be confinement in the Texas Department of Corrections for life or for any term of not more than ninety-nine years or less than five years. We cannot say that the jury did not consider the wrongful charge, and thereby cause some harm to the appellant, in assessing punishment at confinement for forty-five years. Points of error five through seven are sustained.

Having found reversible error for the reasons already stated, we will not address appellant's remaining grounds of error. The judgment of the trial court is reversed and the case is remanded for a new trial.