Sherri HENDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00298–CR.

Court of Appeals of Texas,
El Paso.

Aug. 17, 1995.

Rehearing Overruled Oct. 4, 1995.

---

Abner Burnett, Burnett & Burnett, Inc., Odessa, and Larry Zinn, San Antonio, for appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for the State.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### OPINION

CHEW, Justice.

Sherri Henderson appeals her conviction for murder. After the jury found Appellant guilty, it assessed her punishment at 50 years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. We reverse and remand for a new trial.

In Points of Error One, Two, and Three, Appellant contends that the trial court erred in excluding evidence of her state of mind at the time of the offense and her prior relationship with the "intended victim." The indictment, in two counts, charged Appellant with the murder of Angela Perkins. In Count I, it alleged that Appellant intentionally and knowingly caused the death of Angela Perkins by shooting her with a firearm. TEX.PE-NAL CODE ANN. § 19.02(b)(1) (Vernon 1994). In Count II, the indictment alleged that Appellant, acting with intent to cause serious bodily injury, committed an act clearly dangerous to human life that caused the death of Angela Perkins, namely, shooting her with a firearm. TEX.PENAL CODE ANN.

§ 19.02(b)(2). The trial court instructed the jury on self-defense and defense of a third person as well as the lesser-included offenses of voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide. The jury rejected Appellant's defensive claims and found her guilty of murder as charged in the indictment. In order to address Appellant's contentions, it is necessary to first set forth the evidence admitted at trial before discussing the evidence excluded from the jury's consideration.

This indictment arose out of a shooting which occurred outside of the Zodiac Club in Midland during the early morning hours of November 26, 1993. It is undisputed that Appellant shot the victim with a handgun and killed her. However, the witnesses told divergent stories of the events leading up to the shooting and the shooting itself. It was the State's theory at trial that Appellant shot Angela Perkins to avenge her sister, Monique Henderson, for an earlier fight between Monique and Angela which occurred inside of the Zodiac Club. The evidence is unclear as to exactly what caused that fight or who struck the first blow. During the fight, Angela struck Monique on the head with a beer bottle, cutting her head. Angela suffered a cut lip. After patrons of the bar broke up the fight, both sides made their way outside. Several witnesses described Angela as still very angry. In a little while, members of Angela's family began to argue and fight with Monique and Karen. Upon seeing this, Angela walked over, and after some arguing, agreed to fight Monique "one-on-one." A crowd of 20 or 25 people, consisting of Angela's friends and family as well as onlookers, gathered near the women. Some of the State's witnesses said that most of the crowd stood behind Angela and faced Monique and Karen, while other witnesses said that the crowd gathered around all of them.

According to the State's witnesses, Appellant did not see the fight inside of the club, but Dexter Traylor informed Appellant that Monique had been in a fight and was bleeding. Traylor said that he did not identify the person who had injured Monique. According to Traylor, Appellant "tripped out" and "panicked" when she heard this news and ran out of the club. During the commotion outside, Appellant, who appeared to be upset and afraid, came up beside Monique, who was still bleeding, and asked loudly over the crowd noise who had hit her. When Monique pointed to Angela, Appellant pulled a handgun from the front of her pants, pointed it with both hands at Angela, and fired one shot from a distance of four to seven feet. The shooting occurred only a matter of a few seconds after Appellant walked up. Immediately after the shooting, Appellant stood there stiff, as if she could not believe that she had shot Angela. Appellant handed the gun to a man across the street and then she and Monique ran to their car. When a bouncer saw Appellant and the others attempting to drive away, he fired a shot at her rear tire in an unsuccessful effort to stop them from leaving the parking lot.

Keeping in mind that the trial court limited the testimony of Appellant and Monique, they nevertheless painted a different picture of the events that evening. Monique testified that during a verbal dispute inside the bar, Angela struck her over the head with a beer bottle. After the fight broke up, Monique said that she exited the bar through a side door rather than the front door in order to avoid Angela. Immediately outside, Angela's sister confronted Monique and they pushed each other several times. Monique, concerned that she needed to go to the hospital, said that she did not want to fight and walked away. She saw Karen arguing with a group of people, so she walked over to try to get Karen to leave. While still asking Karen to leave, Monique saw Angela and other people walking towards them. As the group got close, Monique suddenly saw gunfire, and then saw Appellant with the gun. Monique said that she did not see Appellant before the gunshot and she did not hear Appellant say anything. After the shooting, Monique said she and Appellant walked across the street. A man demanded that Appellant give him the gun and took it from her. As they attempted to leave, they heard gunfire and believed that someone had shot at them. Finding that the State had opened the door, the trial court permitted Monique to testify that six months before the shooting, her arm had been broken during a fight with Appellant's boy-

friend. She explained that they fought because he had been abusing Appellant. She also testified that Appellant had no prior experience with a handgun and that she had bought the pistol only four days prior to this shooting.

Appellant testified that after she entered the bar, she became separated from Monique and Karen. At one point, someone approached Appellant and said, "Hey, some nigger just beat the shit out of Monique." Appellant testified that when she heard this, she believed that "a male"[1] had beaten Monique. Worried about what had happened to Monique, Appellant looked throughout the club and then outside for Monique. Unable to find Monique, Appellant went to her car and retrieved a pistol which her father had purchased for her a few days earlier. She tucked the gun into the front of her pants and concealed it under her blouse. She continued to walk around the outside of the club looking for Monique. Eventually she came upon a large crowd gathered near the street. She could hear people in the crowd loudly arguing. Appellant pushed through the crowd and found Monique bleeding badly from her head. At the same time, Appellant saw the crowd moving toward her and Monique as they yelled "[t]hat old bitch ..." and "kick their ass." She then saw someone in the crowd gesture as if pulling a weapon. Fearful for her own life and that of her sister, Appellant pulled out the gun and pointed it toward the crowd. Appellant said that the gun then "went off." She testified that she did not point the gun at anyone in particular. After the shooting, someone took the gun from Appellant, and she and Monique ran to Appellant's car. When someone shot out the rear passenger window, Appellant drove out of the parking lot.

After the prosecutor elicited testimony from Appellant that she had been in a fight earlier that evening at the Zodiac Club in Odessa, the trial court permitted Appellant to testify about that incident. Appellant told the jury that they had gone to the Zodiac Club in Odessa earlier that evening and had seen her estranged husband. He threatened both Appellant and Monique, and referring to Monique, he said that he would "kick her ass again," and that no matter where they went, he could find them.

Even though the trial court permitted Monique to testify that Appellant's husband, Tyrone Morrison, had broken her arm on a prior occasion and permitted Appellant to testify about that evening's altercation with Morrison, the judge excluded Appellant's testimony showing further details of these events and how they related to her state of mind at the time of the shooting. Outside the presence of the jury, Appellant testified that Morrison had beaten her and threatened her life on many occasions during the time they lived together. Even though she had reported these assaults to the police, Morrison had never been arrested. In her testimony outside the presence of the jury, Appellant provided more details concerning the occasion on which Morrison broke her sister's arm. Approximately six months before the shooting, Appellant left Morrison after he assaulted her. When Appellant and Monique returned to the residence to get a change of clothing for her three children, Morrison would not let Appellant leave. Monique intervened and Morrison broke her arm.

After Morrison assaulted Appellant on November 13, 1993, she left him again and stayed temporarily with Morrison's sister, Carolyn Jo McDavid. On November 15, while Appellant and McDavid were at a client's home,[2] Appellant saw Morrison and his other sister, Colanda Morrison, outside. Appellant believed that Morrison had followed them from McDavid's home. When Morrison got into her car, Appellant went outside to find out what he was doing. Morrison rolled the window up on Appellant's hands and drove away, dragging Appellant beside the car for 40 to 50 yards. Morrison stopped the car and asked Appellant whether she would return to live with him. Appellant lied in order to get free and told Morrison

---

1. Appellant testified in this manner because the trial court would not permit her to testify that she believed Monique's assailant to be her husband, Tyrone Morrison.

2. Appellant worked at the Permian Basin Community Center for Mental Health and Mental Retardation. As part of her job, she went to the homes of MHMR clients to provide services.

she would return home. When Morrison released her hands, Appellant attempted to run back to the house. Before she could get inside, however, Colanda drove up and fired two or three shots at her with a small caliber handgun. Appellant then ran into the house and called the police. As a result of this confrontation, Appellant immediately obtained a protective order. She reported several violations of the protective order by Morrison, but the police did not arrest him. Consequently, Appellant purchased a gun to protect herself from Morrison and his family. All of these events occurred less than two weeks before the shooting of Angela Perkins.

Appellant also testified about the confrontation with Morrison at the Zodiac Club in Odessa. She said that Morrison threatened both of them; he told Monique that he would "whip her ass" and "do her like he done her before" and it did not matter where they went. As a result of Morrison's threats, they left that club and went to the Zodiac Club in Midland. Appellant testified that when someone told her that "a nigger's beat the shit out of your sister," she believed that Morrison had indeed found them and harmed Monique as he had promised earlier that same evening. When Appellant finally found Monique surrounded by a crowd of angry people and bleeding badly, she continued to believe that Morrison had assaulted Monique. She testified that the lighting was poor and she did not have on her corrective lenses so she could not clearly see the faces of the people in the crowd. She feared for their lives because people in the crowd were threatening them and moving towards them at the same time. When she saw someone in the crowd make a gesture as if they had a gun, and fearing that it might be Morrison or someone in his family about to harm them, she pulled out her gun and it went off.

■■■ Finding this evidence to be irrelevant and that its prejudicial effect substantially outweighed any probative value, the trial court excluded this evidence from the jury's consideration. Tex.R.Crim.Evid. 401, 403. Appellant contends that the excluded evidence is relevant to both her self-defense

claim and to a determination of whether she acted in "sudden passion." We will first address Appellant's argument regarding relevance to self-defense and defense of a third person. The admissibility of evidence is within the trial court's discretion. *Duckett v. State*, 797 S.W.2d 906, 913 (Tex.Crim.App. 1990). In reviewing the trial court's determination that evidence is relevant, we must uphold the ruling absent an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim.App.1991) (opin. on reh'g). As long as the trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Montgomery*, 810 S.W.2d at 391.

■■■ Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R.Crim.Evid. 401; *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.), cert. denied, —— U.S. ——, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993). Relevancy is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a matter properly provable in the case. *Montgomery*, 810 S.W.2d at 375. Moreover, the evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Id.* at 376.

■■■ The State first argues that the trial court did not err in excluding the evidence since the defenses of self-defense and defense of a third person were not properly raised by the evidence at trial. More specifically, the State complains that the evidence did not show that a reasonable person in Appellant's circumstances would not have retreated. We disagree.

■■■ In order to be entitled to an instruction on the use of deadly force in self-defense, the defendant must produce some evidence on each of the three elements of Section 9.32 of the Penal Code.[3] *Werner,*

---

**3.** Because Appellant used deadly force in killing     Perkins, she had to meet the requirements of

711 S.W.2d at 644; *Holmes v. State*, 830 S.W.2d 263, 265 (Tex.App.—Texarkana 1992, no pet.); *Ogas v. State*, 655 S.W.2d 322, 324 (Tex.App.—Amarillo 1983, no pet.). Therefore, Appellant had to produce some evidence to show that a reasonable person in her position would not have retreated. See *Halbert v. State*, 881 S.W.2d 121, 125 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (some evidence of the inability to retreat is all that is necessary). A defendant's duty to retreat under Section 9.32 does not arise until the defendant believes deadly force was immediately necessary to protect the defendant against the other's use or attempted use of unlawful deadly force. *Young v. State*, 530 S.W.2d 120, 123 (Tex.Crim.App.1975); *Halbert*, 881 S.W.2d at 125; *Hinojosa v. State*, 744 S.W.2d 319, 322 (Tex.App.—Corpus Christi 1988, pet. ref'd).

■ Appellant also received an instruction on defense of a third person under Section 9.33 of the Penal Code.[4] Under this defense, there must be some evidence to show that the accused reasonably believed that a reasonable person in the third person's situation would not have retreated. See *Hughes v. State*, 719 S.W.2d 560, 561 (Tex.Crim.App. 1986).

The evidence showed that Appellant and her sister were in a dark parking lot, surrounded by a charging mob of yelling, angry people. Appellant could see that her sister was bleeding badly. The jury could have concluded that when Appellant saw someone raise their hands as if raising a firearm, a reasonable person would not have turned her back and retreated. See *Hinojosa*, 744 S.W.2d at 322 (jury could have concluded that defendant did not have clear avenue of escape where evidence showed that defendant was in open lot facing an armed aggressor). Further, the jury could have also concluded from these same facts that Appellant reasonably assessed that a reasonable person in Monique's situation would not have retreated. The State's first argument is without merit.

■ Under Section 9.32, the defendant must also produce some evidence to show that she reasonably believed that the use of deadly force was immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force. See *Werner*, 711 S.W.2d at 645. In addition to the above showing, the defendant must also, under Section 9.33, produce some evidence to show that she reasonably believed unlawful deadly force was threatening the third person she sought to protect, and the defendant reasonably believed that her intervention was immediately necessary to protect the third person. See TEX.PENAL CODE ANN. § 9.33 (Vernon 1994). The State argues that the excluded evidence is irrelevant because there is no evidence to show that Morrison or his family were actually present at the time of the shooting. According to the State, Appellant is restricted in showing evidence about Appellant's reasonable belief to that concerning her belief about the victim, Angela Perkins. This argument misapplies the law of self-defense.

■ First, it matters not that the defendant has a mistaken belief about the identity of his assailant. In *Dyson v. State*, 672 S.W.2d 460 (Tex.Crim.App.1984), the State tried the defendant for attempted capital murder arising out of an incident where the

---

both Section 9.31 and Section 9.32 of the Penal Code in order to be entitled to an instruction on self-defense. Section 9.32 provides that the use of deadly force is justified in self-defense only when three conditions are present: (1) the defendant would have been justified in using force under Section 9.31; (2) a reasonable person in the defendant's position would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force, or to prevent the imminent commission of specified violent crimes. TEX.PENAL CODE ANN. § 9.32 (Vernon 1994); see *Werner v. State*, 711 S.W.2d 639, 645 (Tex.Crim.App.1986).

4. A person is justified in using deadly force against another to protect a third person if, under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.32 in using deadly force to protect himself against the unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect, and the actor reasonably believes his intervention is immediately necessary to protect the third person. TEX.PENAL CODE ANN. § 9.33 (Vernon 1994).

defendant fired a weapon at police officers who had been summoned to his home in response to a domestic disturbance between the defendant and his brother. The trial court denied the defendant's request for a self-defense instruction and the jury found him guilty of attempted voluntary manslaughter. At trial, the defendant testified that as he stood in his home, he saw a shadowy figure at his door. Believing the figure to be his brother, the defendant fired several shots at the figure. The figure turned out to be that of a police officer who had responded to the call. Even though the Court of Criminal Appeals ultimately held the defendant not entitled to a self-defense instruction because the defendant had provoked the confrontation with his brother, the court measured whether the defendant had a reasonable belief that use of deadly force was immediately necessary to protect himself against his *brother's* use or attempted use of unlawful force. *Dyson,* 672 S.W.2d at 463; see Tex.Penal Code Ann. §§ 9.31, 9.32. The Court found it immaterial that the defendant was not in fact attacked by his brother since a person has a right to defend from apparent danger to the same extent as he would had the danger been real. *Dyson,* 672 S.W.2d at 463. Second, in the case of multiple assailants, the unlawful deadly force against which the defendant may protect himself need not have been manifested by the victim. *Hinojosa,* 744 S.W.2d at 321, citing *Brown v. State,* 651 S.W.2d 782, 784 (Tex.Crim.App.1983) and *Sanders v. State,* 632 S.W.2d 346 (Tex.Crim. App.1982). The defendant has a right to act in self-defense against the victim if he was in fear of death or serious bodily injury at the hands of either the victim or another assailant. *Brown,* 651 S.W.2d at 784.

Applying these rules to the instant case, the question is not whether Appellant had a reasonable belief that use of deadly force was immediately necessary to protect her and Monique against the use or attempted use of unlawful force by *Angela Perkins;* it is whether Appellant had a reasonable belief that the use of deadly force was immediately necessary to protect them from the use or attempted use of unlawful force by *Morrison* and his family.[5] It is immaterial that Morrison and his family did not in fact attack Appellant and Monique or that they were not even present. The evidence is clear that Appellant did not learn until after the shooting about the fight between Monique and Angela or that Morrison and his family were not in fact present. We conclude that evidence showing Appellant's subjective beliefs about the identity of their assailants, even though erroneous, is relevant. Therefore, the court abused its discretion in finding this evidence irrelevant.

■ In addition to excluding evidence of Appellant's subjective belief of the identity of their attackers, the court also denied Appellant's proffer of evidence which would tend to show the reasonableness of her perception of danger at the hands of Morrison and his family, namely, prior instances in which Morrison or his sister had threatened Appellant and Monique or had used unlawful force against them. Appellant argues that the evidence is relevant and admissible pursuant to former Section 19.06 of the Penal Code (now recodified as Article 38.36 of the Texas Code of Criminal Procedure).[6] Section 19.06 of the Texas Penal Code, in pertinent part, provides:

(a) In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testi-

---

5. The trial court's instruction to the jury required them to determine whether Appellant reasonably believed that the use of deadly force was immediately necessary to protect Appellant against the use or attempted use of unlawful deadly force, either real or apparent, by *Angela Perkins,* or alternatively, by a person unknown acting with Angela Perkins. With regard to defense of a third person, the charge instructed the jury to determine whether Appellant reasonably believed that the use of deadly force was immediately necessary to protect Monique Henderson against

the use or attempted use of unlawful deadly force, either real or apparent, by *Angela Perkins.*

6. *See* Acts 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, and Acts 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen.Laws 1123–24, and Acts 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474–75, *deleted by* Acts 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614, [current version at Tex. Code Crim.Proc Ann. art. 38.36 (Vernon Supp. 1995)].

mony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

(b) In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by Section 9.31, 9.32, or 9.33 of this code, the defendant, in order to establish the defendant's reasonable belief that use of force or deadly force was immediately necessary, shall be permitted to offer:

(1) relevant evidence that the defendant had been the victim of acts of family violence committed by the deceased, as family violence is defined by Section 71.01, Family Code....

■ Section 19.06 in no way broadens or otherwise affects the rules of evidence which apply, or the way in which they apply in any given homicide case. *Fielder v. State*, 756 S.W.2d 309, 318 (Tex.Crim.App.1988). Collateral facts which do not logically tend to prove or disprove matters in issue are not admissible under Section 19.06. Id. at 318. Section 19.06 permits two types of evidence: (1) all "facts and circumstances surrounding the killing" which are probative of the material "condition of the mind of the accused at the time of the offense;" and (2) all "facts and circumstances surrounding ... the previous relationship existing between the accused and the deceased" which are probative of the material "condition of the mind of the accused at the time of the offense." Id.

The State argues that the excluded evidence is not probative of the *material* condition of Appellant's mind. The theories of the prosecution and the defensive theories determine the "material" issues in each individual case. Id. The material condition of mind issues raised by the indictment were: (1) whether it was Appellant's conscious objective or desire to cause Angela Perkins' death at the time of the homicide; and (2) whether Appellant was aware that her conduct was reasonably certain to cause Angela Perkins' death at the time of the homicide. See Id. at 318; Tex.Penal Code Ann. § 6.03(a) (defini-

tion of intentionally); Tex.Penal Code Ann. § 6.03(b) (definition of knowingly); Tex.Penal Code Ann. § 19.02(a)(1) (elements of intentional and knowing murder). The condition of mind issues raised by Appellant's self-defense and defense of a third person claims were: (1) whether Appellant reasonably believed the use of deadly force was immediately necessary to protect herself or her sister; and (2) whether Appellant's assessment of the situation reasonably indicated she or her sister could have retreated. Tex.Penal Code Ann. §§ 9.31, 9.32, 9.33.

■ Section 19.06 appears to be limited on its face to evidence showing prior acts of violence by the deceased. However, in *Dixon v. State*, 634 S.W.2d 855 (Tex.Crim.App. [panel op.] 1982), the Court of Criminal Appeals did not limit application of Section 19.06 to the relationship between the accused and the deceased. In that case, the defendant fired a gun at a person who had assaulted the defendant's girlfriend with a stick. Appellant missed the intended target and killed a bystander. The trial court excluded evidence showing prior acts of violence against third persons on the part of the defendant's "intended victim." The Court of Criminal Appeals held that pursuant to Section 19.06, the defendant is permitted to show prior acts of violence towards third persons by the "intended victim" in order to show the reasonableness of the defendant's claim of apprehension of danger. *Dixon*, 634 S.W.2d at 857. Thus, Section 19.06 is not strictly limited in its application to the prior conduct of the deceased.

Even though the State admits that Section 19.06 applies to the relationship with an "intended victim," it argues that Angela Perkins was the intended victim, not Morrison. In making this assertion, the State focuses only upon certain evidence admitted at trial, and it ignores the evidence to the contrary. Further, it disregards the issues raised by Appellant's defenses and attempted defenses. The evidence showing the prior assaults upon Appellant and her sister by Morrison and his family was relevant to the reasonableness of Appellant's belief that use of deadly force was immediately necessary to protect both her and Monique from the use or attempted

use of deadly force by Morrison or his family. Consequently, the trial court abused its discretion in concluding the evidence to be irrelevant.[7]

Even though the trial court found the evidence to be irrelevant, the judge went further and also found that the danger of unfair prejudice substantially outweighed the probative value of this evidence. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R.CRIM.EVID. 403. The approach under Rule 403 is to admit all relevant evidence unless the probative value is substantially outweighed by the danger of unfair prejudice to a defendant. *Montgomery*, 810 S.W.2d at 377. Virtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party. Id. at 378. After all, the central point of offering evidence is to injure or prejudice the opponent's case. *Torres v. State*, 794 S.W.2d 596, 600 (Tex.App.—Austin 1990, no pet.). It is only "unfair" prejudice that will result in the exclusion of relevant evidence. *Montgomery*, 810 S.W.2d at 378. The potential for "unfair" prejudice arises when the evidence suggests making a decision on an improper basis, commonly, though not necessarily, an emotional one. Id. at 389.

The excluded evidence is highly probative of Appellant's state of mind. Quite obviously, Appellant's subjective belief as to the identity of their attackers is probative of her state of mind. The recent assaults and threats by Morrison and his sister are especially probative of the reasonableness of Appellant's belief that the use of deadly force was necessary to protect both herself and Monique from what she perceived to be deadly force at the hands of Morrison and his family. This evidence does not suggest deciding that issue on an improper basis. To the contrary, it is difficult to perceive how the jury could be expected to make an informed, moral judgment as to the reason-

ableness of Appellant's belief without this evidence. Therefore, we conclude that the trial court abused its discretion in determining that any prejudicial effect of this evidence substantially outweighed its probative value. For these reasons, we find that the trial court erred in excluding the evidence of Appellant's subjective beliefs at the time of the shooting, and her prior relationship with Morrison, including Morrison's prior assaults on both her and Monique.

### *Harmless Error Analysis*

Having determined that the trial court erred in excluding this evidence from the jury's consideration, we must examine whether the error was harmless. TEX. R.APP.P. 81(b)(2). Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Crim.App. 1989). We must determine whether, beyond a reasonable doubt, the error made no contribution to the conviction or the punishment. *Burks v. State*, 876 S.W.2d 877, 904–05 (Tex. Crim.App.1994); *Perez v. State*, 824 S.W.2d 565, 568 (Tex.Crim.App.1992). An error is harmless if it did not interfere with the integrity of the trial process sufficiently to affect the outcome of the trial. *Burks*, 876 S.W.2d at 905; *Harris*, 790 S.W.2d at 587; *Perez*, 824 S.W.2d at 568. In the absence of this evidence, the State was able to convince the jury that Appellant intentionally shot Angela Perkins in retribution for harming her sister. The exclusion of the state of mind evidence had a tremendous effect on the ability of the defense to explain Appellant's perception of the events that evening as well as her conduct. It also prohibited the defense from being able to effectively utilize some of the evidence that the jury had before it. For example, a witness testified that Appellant "tripped out" and panicked when she heard that someone had beaten up her sister. By prohibiting Appellant from explaining that she experienced this unusual level of fear because she believed Monique's attacker to

---

7. Due to our resolution of this issue with regard to self-defense, we need not determine whether the evidence is also relevant to a determination of whether Appellant acted under the influence of sudden passion.

be Morrison, this evidence had little or no significance to the defense. In fact, without this evidence, her level of panic seems unreasonable and irrational. In the absence of the excluded evidence, the defense was also unable to adequately explain why Appellant had a handgun in her possession or why she retrieved it upon hearing that her sister had been beaten up and injured. Again, her conduct appears unreasonable when measured only against the evidence that the jury had before it. Because the exclusion of this evidence significantly restricted Appellant's ability to present her defense, we cannot conclude beyond a reasonable doubt that the error made no contribution to Appellant's conviction. Points of Error One, Two, and Three are sustained.

Having sustained Appellant's points of error, the judgment of conviction is reversed and this caused is remanded to the trial court for a new trial.